COPE, C.J.
Plaintiff Joe M. Fernandez appeals a final judgment after jury verdict in favor of defendant Union Carbide Corporation on his claim of asbestosis. We affirm.
The plaintiff, was a drywall installer for many years beginning in 1966. He testified that the only joint compound he ever used was Georgia-Pacific Ready Mix. At the relevant times, some of the compound formulas in the product contained Union Carbide’s Calidria asbestos.
The plaintiff alleged that he breathed asbestos-containing dust by virtue of installing and sanding the joint compound from 1966 to at least 1973. The plaintiff alleged he developed medical problems in 1999 and that he was diagnosed with asbestosis in 2002.
The plaintiff filed an action against numerous defendants, including Union Carbide, in August 2002. As to Union Carbide, the plaintiff alleged that Union Carbide failed to warn regarding the dangers of asbestos, and that Union Carbide manufactured a defective product. The case proceeded to trial, at which the jury returned a verdict in favor of Union Carbide. Fernandez has appealed.
The plaintiff argues that the trial court erred by admitting into evidence certain medical records of the plaintiff which had not been seen by either side prior to trial. This unexpected development occurred when the plaintiff called as a trial witness the records custodian for his general care physician, Doctor Cordoves, in order to authenticate his medical records.[1] During this testimony both parties learned that the plaintiffs chart included some medical records which had never been provided to either side. Specifically, the newly discovered records included an August 23, 2003 report from a pulmonologist, Dr. Icochea (the “Icochea Report”). Apparently Doctor Cordoves referred the plaintiff for an evaluation by Doctor Icochea at around the time of the discovery cutoff. *752 Neither side was aware of this referral and neither side had received Doctor Icochea’s Report.
Doctor Cordoves’ medical file regarding the plaintiff also contained seven post-it notes containing handwritten notes, which had been stapled in the file. The defense objected to the admission of these pieces of notepaper, on the ground that there was no indication who made those notes, or what the notes represented. By the time this issue arose, the records custodian had been excused and had not been asked to identify the handwriting on the notes.
The plaintiffs initial position was that the plaintiffs medical file should be admitted into evidence in its entirety. This included the Icochea Report and the handwritten notes. The trial court ruled that the Icochea Report would be received in evidence, but not the handwritten notes. The court overruled the plaintiffs objection that the rule of completeness required the handwritten notes to be admitted.
During these proceedings, the parties also noticed that Doctor Cordoves’ copy of the Icochea Report was missing its second page. The plaintiff objected that the report should be excluded on that ground. The objection was overruled and the plaintiffs motion for mistrial was denied.
We conclude that the trial court acted within its discretion in admitting the Ico-chea Report into evidence. The trial court reasoned that the Icochea Report was a recent diagnosis of the plaintiffs lung condition. The question whether the plaintiff had asbestosis or some other disorder was a disputed issue in the case. The plaintiffs initial argument was that under the rule of completeness, the Icochea Report should be admitted into evidence only if the handwritten notes in the file were also admitted into evidence.
Turning to the handwritten notes, the plaintiff proffered to the trial court that the handwritten notes were made by Doctor Cordoves. For present purposes we accept that proffer, but the meaning of the notes was never made clear. Doctor Cordoves was the plaintiffs general care physician, not a pulmonologist or other expert in lung disease. Neither side called Dr. Cordoves as a witness or took Dr. Cordoves’ deposition, so there is no explanation what the notes mean. There is nothing on the face of the handwritten notes to link them to Doctor Icochea or the Icochea Report. Two of the notes mention meso-thelioma, yet neither side made any claim, or presented any diagnosis, that the plaintiff suffered from mesothelioma.
Professor Ehrhardt has stated:
Although section 90.803(6) removes the hearsay bar for entries of opinion and diagnosis, not every opinion in a hospital or medical record is automatically admissible in the absence of the expert testifying and being subject to cross-examination. For example, in this situation the court may decide that the probative value of the opinion is outweighed by the danger that the jury will be confused or misled. The danger is particularly significant with respect to complex diagnostic opinions.
Charles W. Ehrhardt, Florida Evidence § 803.6a, at 906 (2006) (footnote omitted).
Under the rule of completeness, “When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.” § 90.108(1), Fla. Stat. (2003). See generally Charles W. Ehrhardt, Florida Evidence § 108.1. In this case there was no showing of what the handwritten notes meant, nor is there any indication *753 that the notes bore any relationship to the Icochea Report or any other part of the plaintiffs medical file such that the notes should in fairness be considered contemporaneously. We conclude that the trial court acted within its discretion in excluding the handwritten notes while admitting the Icochea Report into evidence.
During the proceedings, the parties observed that the Icochea Report was missing its second page. It appears that Doctor Icochea had faxed the report to Doctor Cordoves and the second page did not proceed properly through the fax machine. The plaintiff objected to its admission unless the second page was added to the document. The plaintiff had obtained the missing page from Doctor Icochea and requested that it be added.
The trial court ruled that since the Ico-chea Report was being admitted as part of the plaintiffs medical chart from Doctor Cordoves’ office, the report would come into evidence in the form in which Doctor Cordoves had it. Although excluded, the missing second page was made part of the record and is now before us. It contains preliminary matter which did not impinge on the substance of the report. We conclude that the ruling was within the trial court’s discretion or if not, was harmless error.
The plaintiff argues that the trial court erred in allowing the parties’ experts to review the Icochea Report and to testify regarding its meaning. The trial court took the position that since the Icochea Report was in evidence, each side would be allowed to show the report to its expert and each side’s expert would be allowed to comment about the report. The plaintiff did not object to this procedure. In the plaintiffs case, the plaintiff asked its expert, Doctor Mezey, to testify regarding the Icochea Report, and Doctor Mezey did
During the defense case, the defense asked its expert, Doctor Feingold, to testify regarding the Icochea report, and Doctor Feingold did so. At the conclusion of direct examination the plaintiff moved (out of the hearing , of the jury) to strike the doctor’s testimony on the ground that Doctor Feingold gave a different diagnosis on the stand than he had in his pretrial reports. In his pretrial reports Doctor Fein-gold had said his diagnosis of the plaintiffs illness was “Usual Interstitial Pneumoni-tis,” referred to as “UIP.” During trial testimony he used the term “Idiopathic Pulmonary Fibrosis,” referred to as “IPF.” The experts from both sides had testified that those terms were often used interchangeably.
The court responded that under the court’s understanding of the law, the correct remedy would be a mistrial rather than the striking of the testimony. The court then indicated, “Make sure you want what you ask for, because ... I don’t ever take anything under submission and wait to see how things play out.” The plaintiff then asked, and the court agreed, that the plaintiff would first cross-examine Doctor Feingold and then make a decision whether to make a. motion for mistrial. The plaintiff cross-examined Doctor Feingold at length, after which the plaintiff informed the court that the plaintiff would not be moving for a mistrial. Under the circumstances, we see no basis on which to order a new trial.
We have reviewed the plaintiffs remaining claims and find that no reversible error has been shown.
Affirmed.

. Because the regular records custodian was out on leave, another physician in the office, Doctor Abdul-Ruhman, appeared in the capacity as records custodian.